# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DORIS A. TAGGART-GOLDEN                                                                    PLAINTIFF

v.                                        No. 5:05CV0354 JLH

JEFFERSON COUNTY, ARKANSAS, A
Public Body Corporate and Politic,
WALLY HUNT, In His Official Capacity as Director
of Metropolitan Emergency Communications Association,
MELINDA ELLIOTT, In Her Individual and Official Capacity
as Operations Manger of Metropolitan Emergency Communications
Association                                                                                DEFENDANTS

## OPINION AND ORDER

Doris A. Taggart-Golden, an African-American female, brought race and age discrimination claims pursuant to Title VII, the ADEA, and the Fourteenth Amendment against her employer, Jefferson County, Arkansas; Wally Hunt, in his official capacity as director of the Metropolitan Emergency Communications Association; and Melinda Elliott, in her individual and official capacity as operations manager of MECA. She alleged that the defendants failed to select her for the position of Supervisor/Training Coordinator because of her race and age. She also alleged that the County failed "to put in place an [sic] promotional procedure that is fair and that does not have a discriminatory impact against its African-American employees" and failed "to promulgate an adequate training program designed to eliminate" race and age discrimination in promotion by its employees. The defendants have filed a motion for summary judgment. For the reasons stated below, this motion is denied.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)). The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consol.*

*Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

## I.

At the time she filed her complaint, Golden was forty-six years old and employed by the Metropolitan Emergency Communications Association. MECA is an association run jointly by Jefferson County along with cities within the County to handle 911 emergency calls. Hunt is the director of MECA while Elliott is MECA's operations manager. Golden was hired by MECA in September 1988 as a COM I operator and promoted to the position of COM III supervisor in July 1996. As a COM III supervisor, Golden was responsible for training MECA employees on the policies and procedures for 911 operators. Lee Ann Smith, a white woman, was hired by MECA in July 1997 as a COM I operator and promoted to COM III supervisor in April 2002.

In January 2005, MECA created a new position entitled "Supervisor/Training Coordinator." The pay scale for that position was the same as the pay scale for COM III supervisors. The training-coordinator position was a day-shift position as opposed to the rotating shifts that COM III supervisors had to work.[1] Only COM III supervisors were eligible to apply for the new position.

Elliott posted a notice to all MECA employees advertising the availability of the new position. Both Golden and Smith, who is fourteen years Golden's junior, applied for that position. Elliott chose Smith over Golden for the position.

---

[1] Although the advertisement for the training-coordinator position stated that it "require[d] availability to work rotating shifts," Elliott's affidavit confirms that it was in fact a day-shift position.

**II.**

Golden asserts that the defendants discriminated against her on the basis of her race and age when she was not selected for the position of training coordinator. Since Golden has produced no direct evidence of discrimination, her claims are evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Herts v. Smith*, 345 F.3d 581, 588 (8th Cir. 2003) (Title VII and Fourteenth Amendment); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 836 (8th Cir. 2002) (ADEA). Under the burden-shifting framework, a plaintiff must first make out a prima facie case of discrimination. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006). To make out a prima facie case, a plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful discrimination. *See, e.g.*, *Wells v. SCI Management, L.P.*, 469 F.3d 697, 700 (8th Cir. 2006); *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002).

The defendants argue that Golden's claims for race and age discrimination fail because Golden's non-selection for the training-coordinator position does not constitute an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Reynolds v. Ethicon Endo-Surgery, Inc.*, 454 F.3d 868, 872 (8th Cir. 2006) (internal quotation omitted). "A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status – a reduction in title, salary, or benefits." *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (internal quotations omitted).

The defendants point to the undisputed fact that the salary for the training-coordinator

position was the same as Golden's salary as a COM III supervisor to support their argument that no adverse employment action occurred. That Golden would have had the same salary had she been selected to the training-coordinator position, however, is not dispositive of the question of whether an adverse employment action occurred. In *Tadlock v. Powell*, the Eighth Circuit held that, despite the fact that the plaintiff remained in the same salary grade, the plaintiff's reassignment constituted an adverse employment action because his new position was less desirable in that it was less prestigious and did not entail supervising employees. 291 F.3d at 547.

Like the plaintiff in *Tadlock*, Golden has produced evidence showing that, despite the similarity in pay, the training-coordinator position was a more desirable position than being a COM III supervisor. The training-coordinator position was a permanent day shift, which is more desirable than the rotating shifts COM III supervisors are required to work. Furthermore, there was a formal selection process, including the submission of resumes and candidate interviews, for the training-coordinator position. And, while there were several COM III supervisory positions at MECA, there was only one training-coordinator position. *Cf. id.* (finding the lesser number of available positions for a certain job classification as evidence of greater prestige). Because of that evidence, Golden has created a triable issue of fact as to whether she suffered an adverse employment action.

The defendants do not contest any other element of the prima facie cases for Golden's claims. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to identify a legitimate reason for terminating the plaintiff's employment. *See McDonnell Douglas*, 411 U.S. at 802. If the employer meets its burden of articulating a legitimate, non-discriminatory reason for the discharge, the plaintiff must then prove that the articulated reason was a pretext. *See id.* at 804. The defendants argue that they are entitled to summary judgment because they have asserted a

5

nondiscriminatory reason, which Golden has failed to show is pretextual.

The defendants' proffered reasons for the decision not to select Golden for the training-coordinator position are contained in the following paragraph from Elliot's affidavit:

> I viewed the information contained on the resumes of great import; I viewed the information gained from both in the interview process as important; and also is the fact [sic] that having worked around both of these individuals for many years gave me the ability to discern which of them would be better at the specific duties which were created on the job description. . . . I simply felt that based upon all information available to me and knowledge of both applicants that Ms. Smith would perform better in this position.

Golden argues that these reasons are pretext for race and age discrimination. In support of that argument, Golden notes that these reasons are subjective. Subjectivity in an employment decision alone does not necessarily support an inference of discrimination. *Taylor v. White*, 321 F.3d 710, 717 (8th Cir. 2003). However, an employer's asserted reliance on such subjective factors are to be "closely scrutinized for discriminatory abuse." *O'Connor v. Peru State College*, 781 F.2d 632, 637-38 (8th Cir. 1986). When combined with other evidence of discrimination, the subjectivity of the employer's articulated reasons can support a finding that the employer's reasons were pretext for unlawful discrimination. *See, e.g.*, *Coble v. Hot Springs Sch. Dist. No. 6*, 682 F.2d 721, 726-27 (8th Cir. 1982).

Viewing the evidence in the light most favorable to the plaintiff, Golden has presented evidence that, coupled with the subjective nature of Elliot's proffered reasons, creates a genuine issue of material fact concerning whether the defendants' proffered reasons are pretexts for race discrimination. Golden has presented evidence that Elliott ordinarily promotes the employee with the most seniority and experience. Golden has presented evidence that, when a white employee has had more seniority or experience than an otherwise qualified black employee competing for the same

promotion, the white employee has been promoted. Golden also has presented evidence of at least one instance in which seniority was the determining factor when two black employees were competing for the same promotion. Golden had approximately nine years more experience at MECA than Smith. Golden had been a supervisor at MECA for more than eight years, while Smith had been a supervisor for less than three. Golden has presented evidence that no African-American has ever held a permanent position on Elliott's administrative staff. The positions on the administrative staff are the most prestigious at MECA because they are day shift positions with weekends and holidays off. Golden has also presented evidence that Elliott typically gives white employees the first opportunity to man the mobile command center during emergencies. Being chosen to man the mobile command center is desirable because it entails extra pay and extra time that can be used by employees to take time off with pay. A reasonable jury could conclude, based on this evidence, that the subjective reasons Elliott gave in her affidavit for not selecting Golden to the training-coordinator position were not the real reasons but were pretexts for race discrimination.

If the jury disbelieves Elliott's explanations for her decision, then they could reasonably find for Golden on her claim for age discrimination as well. "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000). Golden has presented facts in her prima facie showing that create a reasonable inference that age played a part in Elliott's decision to select Smith for the training-coordinator position instead of Golden. She has presented evidence that discredits Elliott's explanation. That evidence creates a genuine issue of material fact as to whether age discrimination occurred. Summary judgment is denied on this claim.

**III.**

The defendants have moved for summary judgment on Golden's § 1983 claim against the County and Hunt and Elliott in their official capacities. The claims against Hunt and Elliott in their official capacities are the same as the claim against the County. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). "In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Turner v. Waterbury*, 375 F.3d 756, 761-62 (8th Cir. 2004).

"The authority to make municipal policy is necessarily the authority to make *final* policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 927, 99 L. Ed. 2d 107 (1988) (plurality opinion). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id*. Here, the defendants have offered MECA's employment opportunity policy which states that "MECA does not discriminate in employment opportunities or practices on the basis of race [or] age [or] any other characteristic protected by law. . . . Anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action."

However, Golden argues that the County may be liable for a "custom or usage" of unconstitutional violations, even though the custom or usage has not been formally approved through official decisionmaking channels. *See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). A "custom or usage" is demonstrated by:

(1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). The pattern of preferential treatment for white employees described above is sufficient to create a genuine issue of material fact on this point.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED this 10th day of April, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE